## BOSTLEMAN *vs.* BOSTLEMAN and wife.

Where an agent for the purchase of real estate has the deed therefor made in the name of his wife, but the true consideration for the conveyance was real estate of the principal, a trust results in favor of the principal. Knowledge by the principal that the deed was so made, and his consent thereto, would not affect the trust.

On pleadings and proofs.

*Mr. Bretzfield,* for complainant.

*Mr. J. C. Besson,* for defendants.

THE CHANCELLOR.

The bill is filed for relief against the alleged fraud of the defendants, in taking and holding title to a certain farm in Middlesex county, of which the complainant claims to be the equitable owner.

It appears that the complainant, at the time of the purchase of the farm, was the beneficial owner of eleven lots of land in Hoboken, the title to which was held by his niece, Anna Walter, in trust for him. He claims that the farm was obtained by him from two persons, of the name of Fudickar, mother and son, through the defendant, Rudolph, who was a land agent, in exchange for the eleven lots. He states that he directed that the title to the farm be taken in the name of his wife, Delia, but that afterwards he discovered, to his surprise, that instead of obeying his instructions, the defendant, Rudolph, had, without his knowledge or consent, and against his will, caused the greater part of the farm to be conveyed to one Claus Vonder Decken, on the alleged consideration of $10,000, though none was paid, and the rest to Anna Walter, on the nominal consideration of $1, and afterwards, without complainant's knowledge or

consent, and against his will, had caused Vonder Decken and Anna Walter to convey, without consideration, the property to the defendant, Marie, Rudolph's wife, who still holds it.

The defendants insist that the complainant was enabled to make the exchange by the defendant, Rudolph, who, being about to exchange with the Fudickars ten lots in Hoboken, belonging to his wife, at complainant's request, permitted him to substitute therefor his eleven lots, on the agreement that the complainant should receive from the defendants $1000 in cash, to enable him to go to Texas, where he proposed to go into business, and that the property should be conveyed to, and held by the defendant, Marie, in trust, until it should be sold, by the mutual consent of her and the complainant, for at least $15,000, the price realized to be equally divided between them. The complainant insists that his eleven lots constituted the whole consideration of the conveyance of the farm ; while the defendants insist that the consideration was much greater, and that, in addition to the lots, valued at $6100, net, there was paid, on account of the consideration, the sum of $4502.71, made up of a sum of about $3800, due, as they allege, from Fudickar, for certain guarantees made by Rudolph for him, and of $702.71 in cash, of the money of the defendant, Marie ; the former amount allowed, and the latter paid to the Fudickars, in the transaction.

The defendants allege that the conveyance of the farm in parcels to Vonder Decken and Anna Walter, as well as that by those persons respectively, to Marie E. Bostleman, was with the complainant's knowledge and consent. They also claim that for a year the complainant acquiesced in the holding of the title by the defendant, Marie, in the meantime occupying the farm, and consenting to a mortgage put upon it, part of the amount of which he received, but expended it on the farm, in stocking and improving it.

The defendants, though they deny the complainant' statement as to the transaction under consideration, do not deny

that he has an interest in the farm. They insist that it is not exclusive, but that the defendant, Marie, has also an interest in it, as above stated. He claims that the property was conveyed to and is held by the defendant, Marie, through fraud. They claim that it is held by her, pursuant to agreement, for herself and the complainant, on the trust above mentioned.

If the complainant has proved the case made by him in the bill, he is entitled to the relief he seeks.

The first subject of inquiry in this connection, important only, however, as tending to show on which side the truth lies, is as to how the exchange originated. The defendants, by their answer, say that they had negotiated an exchange with Fudickar, of ten lots in Hoboken, belonging to Rudolph's wife, for the farm. In his testimony, Rudolph says the exchange was to be the ten lots for the farm. Neither in the answer, nor in the testimony of Rudolph, is it stated what was the value, or estimated value, of those lots; nor is it stated where or what they were; nor is there any proof, beyond the simple mention of them as ten lots in Hoboken, belonging to her, that she had them. It is worthy of remark, that no witness is sworn on behalf of the defendants, except Rudolph. The testimony of Fudickar, with whom the exchange was negotiated, would have been, if available to them for the purpose, valuable testimony in corroboration of their statement. But they neither produced him as a witness, nor made any effort to obtain his testimony. Indeed, although a commission was issued to examine him, and his testimony was taken by the complainant, they did not even put a cross-interrogatory to him.

The next question is as to the real consideration of the conveyance of the farm by the Fudickars. The complainant alleges in his bill, and in his testimony, that it was his lots, and only those lots. In this he is fully corroborated by the testimony of Gustavus A. Fudickar, who negotiated the exchange on the part of himself and his mother. He says, that

he and his mother were paid for the farm by the conveyance of the eleven lots; that no money was paid by anybody, and that he was never indebted to the defendants, or either of. them; that he received no money from them, or either of them, and that he never knew that either of them had any interest in the transaction relating to the exchange.

The consideration, stated in the deeds to Claus Vonder Decken and Anna Walter from the Fudickars, is some evidence that the price agreed to be paid to the Fudickars, was not $15,000, as defendants state, but rather $9800, as complainant insists; the last mentioned sum being the valuation which the complainant says was put on the lots in the exchange. It appears that the farm was subject to a mortgage of $3000, and the lots to a mortgage of $3700. He is corroborated in the statement as to valuation, by the memorandum given to him by Rudolph, as complainant says, the day after the deeds for the farm were signed, which is as follows:

|  |  |  |  |  | Dr. |
|---|---|---|---|---|---|
| To paid for farm, $9800—3700, | - | - | - | | $6100 |
| Mortgage on farm, | - | - | - | - | 3000 |
| Sundry expenses, | - | - | - | - | 500 |
|  |  |  |  |  | $9600 |
|  |  |  |  | Cr. | |
| By sundry mortgages, | - | - | - | $1290 | |
| By 209 lots @ $4, deposit, | - | - | - | 836 | |
|  |  |  |  | | $2126 |

This is a statement, not of contribution to the farm, but of its whole cost.

Rudolph says, the paper must have been given before any deeds were signed, because the item "expenses" therein, was an average estimate, and also because the item of $4 deposit for 209 lots would not have been on it, if the paper had been written and given after the execution of any deed. But if the paper was given the day or day after the conveyance of the farm was made, and before the transaction had been closed up between the complainant and Rudolph, as principal and agent,

the expenses would probably have been stated at an estimated amount; and as to the item of deposit on the lots, it seems to be a statement of the amount paid down by purchasers of lots sold off the farm by the Fudickars, the benefit of the proceeds of which sales complainant was to have, the whole farm being conveyed to and paid for by him. For it appears by the deeds from the Fudickars, that lots had been sold off the farm, but not conveyed. The draft of agreement, which was offered and read in evidence, on the part of complainant, without objection on the part of the defendants, and which was used on the hearing by both parties, as being important evidence in their behalf, provides for the conveyance to complainant's wife, Delia, of the farm and certain other real estate belonging to the complainant, situate on Long Island, the title to which was held for him by the defendant, Marie, "on the payment of $200, over and above the full amount of all expenditures incurred" by her "on account of the ownership" of those properties.

The evidence on the part of complainant, is clear that the whole consideration was paid by him. The defendants' statement in their answer, wholly unsupported, save by the testimony of Rudolph, in respect to the alleged indebtedness of Fudickar, which they claim to have allowed as part of the consideration, is not of itself of a character to invite credence, but the contrary. No proof, beyond the statement in the answer and Rudolph's testimony, is offered, nor is any corroboration attempted. So, too, of the $702.71 cash. Besides, the payment of this money, and the allowance and existence of the alleged indebtedness on the part of Fudickar, is expressly denied.

To my mind the conclusion is irresistible that the complainant paid the whole consideration for the farm. If so, he is, as the case stands, entitled to a conveyance of it from the defendants. The conveyance of the farm to the defendant, Marie, appears to have been without complainant's knowledge or consent.

The statement of the defendants in the answer, and the

statement of Rudolph in the testimony, as to the reason and circumstances of the conveyance to Claus Vonder Decken and Anna Walter, respectively, do not seem to be entitled to confidence. The answer gives as a reason for the conveyance to the former, that Claus was desirous of becoming the owner of the farm, and it was expected that his family would furnish the money to pay for it. But Claus Vonder Decken swears that he never knew, previous to the signing the deed to Marie, as he did, at her husband's request, that the property had been conveyed to him ; that when Rudolph asked him to sign the deed, the former said : " It would not hurt him, and it would be good for him, to say he had owned some property."

Ludig Semler, a lawyer whom the complainant employed to assist him in getting the title from the defendant Marie, and who was sworn for the complainant, testifies that, when complainant and Rudolph came together to his office, in November or December, 1870, (the conveyances of the Fudickars were dated November 25th, 1870, and acknowledged on the 28th of the same month), in reference to the transfer of the property to complainant's wife Delia, Rudolph said the title was in the name of a man by the name of Claus Vonder Decken, who " had given a deed, signed in blank, in return." The deed from Vonder Decken is dated November 28th, 1870, and was acknowledged on the 3d of December, in that year.

So, too, in respect to the conveyance by the Fudickars to Anna Walter. This, the defendants say, was to secure the repayment of some money—$800—she had entrusted to Rudolph to invest for her. Rudolph says, in his testimony, that he returned this money to Mrs. Walter for Anna, several months afterwards. In the answer, the defendants say it was returned to her, on or about May 11th, 1871. But Anna says she changed her mind, and took the money back, just as she gave it, and it was there fourteen days—three or four weeks—it might be longer. Maria Walter says, she took the

money to Rudolph in November, 1870, and took it back a little after New Year, 1871.

Now, the defendants say, in their answer, that the money was handed to Rudolph at the time of the exchange of the farm.

The deed from Anna to Marie E. Bostleman is not dated in May, 1871, but December, 1870, and is upon a nominal consideration. She seems to have known nothing, whatever, about the alleged conveyance to her, as security.

It appears, by the testimony of Claus Vonder Decken, Maria Walter, and Henry C. Hintze, that the defendant, Marie, did not know that the conveyance had been made to her, and did not claim any interest in the property, but recognized the fact that it belonged to the complainant.

That there were confidential relations between these parties, complainant and defendant, I do not doubt, but I find no proof to satisfy me that the complainant ever agreed to the conveyance of the property to the defendant Marie. On the other hand, we find him, according to Semler, some time in November or December, within a few weeks, and perhaps days, of the time of the conveyance of the farm by the Fudickars, seeking, as of right, at the hands of Rudolph, to have the title made to complainant's wife.

The defendants have not proved any interest in the property, unless it be the claim, acknowledged by the complainant in the draft of agreement to convey the farm and one hundred and twelve lots in Islip, Long Island, also held by the defendant Marie, for the complainant, to "$200 over and above the full amount of all expenditures incurred on account of the ownership of those properties." But they make no such claim in this suit. They set up an ownership which they have not proved, a trust which they have not established.

The complainant has proved that he purchased the farm, and that he paid all the consideration. The defendants admit that they hold the title in trust for him, to a certain extent, and that the transaction was, in all respects, legitimate. The evidence satisfies me that the complainant was

the real purchaser of the farm, and that all the consideration was his eleven lots; that the deeds to Anna Walter and Claus Vonder Decken, and those to Marie E. Bostleman, were without complainant's knowledge and consent, though he afterwards acquiesced in the holding of the title to the farm for him, by the defendant Marie; that he went upon the farm to manage it on joint account, so far as the management and products were concerned, of himself and Rudolph, and did so manage it.

Whether the deeds to Marie were made with or without complainant's knowledge or consent, there is a resulting trust in his favor, and he is, under the circumstances, entitled to a conveyance.

There must be a decree, directing the defendants to convey the farm to the complainant. The complainant is entitled to costs.